ATTACHMENT B

PLAINTIFF'S ORIGINAL PETITION

Filed 9/28/2021 11:15 AM
Brenda Rowe, District Clerk
Wise County, Texas
By: Carrie Scharlz

NO. CV21-09-682

| | |
|---|---|
| ALYCIA HYSOM<br><br>*Plaintiff,*<br><br>v.<br><br>DECATUR INDEPENDENT SCHOOL DISTRICT<br><br>*Defendant.* | IN THE DISTRICT COURT<br>WISE COUNTY<br><br>271ST JUDICIAL DISTRICT<br><br>PLAINTIFF'S ORIGINAL PETITION |

Alycia Hysom ("Plaintiff" or "Hysom") files this Original Petition against Decatur Independent School District ("Defendant" or "DISD").

## I. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under a Level 2 discovery control plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

## II. INTRODUCTION

2. Hysom brings this cause of action against Defendant for violation of Hysom's rights under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADAAA") and the Texas Labor Code § 21.001 *et seq.* ("Texas Labor Code Chapter 21"). As set forth in more detail below, DISD discriminated against Hysom by subjecting her to different terms and conditions of employment, failing to accommodate her disability, and ultimately terminating Hysom from her employment based on her disability.

3. Hysom files this Complaint against DISD, seeking recovery of her damages as a result of Defendant's unlawful discrimination against her on the basis of her disability.

1

### III.  PARTIES

4. Alycia Hysom is an individual who resides in Texas. At all times relevant to the matters set forth in this Original Petition, Hysom was an employee of Defendant. All pleas, pleadings, motions, discovery, and other matters related in whole or in part to this case should be served on Plaintiff's attorneys, Drew N. Herrmann, Pamela G. Herrmann, and Allison H. Peregory of Herrmann Law, PLLC, at 801 Cherry Street, Suite 2365, Fort Worth, Texas 76102.

5. Defendant Decatur Independent School District ("DISD") is an independent school district authorized by and constituting a political subdivision or agency of the State of Texas. DISD is a public corporation authorized by the Constitution and laws of the State of Texas and operates public schools in Decatur, Texas. DISD may be served through the Interim Superintendent of Decatur Independent School District, Dr. Ann Dixon, at 307 S. Cates Street, Decatur, Texas, 76234.

### IV.  JURISDICTION AND VENUE

6. Hysom brings this action against DISD for violating Hysom's rights pursuant to the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADAAA") and the Texas Labor Code § 21.001 *et seq.* ("Texas Labor Code Chapter 21"). The subject matter in controversy is within the jurisdictional limits of this court.

7. Defendant is subject to personal jurisdiction in Texas. Defendant does substantial business in the State of Texas and employs Texas residents to perform work for Defendant. The acts complained of arise from Hysom's employment by Defendant who hired Hysom to perform work for Defendant in Wise County, Texas.

8. Venue is proper in Wise County under Texas Civil Practice and Remedies Code

section 15.002 because all or a substantial part of the events or omissions giving rise to the cause of action occurred in Wise County, Texas.

## V. CONDITIONS PRECEDENT

9. All conditions precedent to jurisdiction have occurred or been complied with.

10. Hysom timely filed a Charge of Discrimination against Defendant under FEPA Charge No. 1A21456 with the Texas Workforce Commission ("TWC") on January 15, 2021.

11. On July 30, 2021, the TWC issued a "Notice of Right to Sue" letter entitling Hysom to file an action in this Court. The filing of this lawsuit has been accomplished within sixty (60) days of receipt of the notice.

## VI. FACTUAL ALLEGATIONS

12. Defendant has more than 100 employees.

13. On July 31, 2020, DISD hired Hysom to work as a special education paraprofessional at Young Elementary School ("Young Elementary"). Hysom was offered a starting pay of approximately $1,900.00 per month.

14. During her employment as a special education paraprofessional, Hysom was assigned to assist students with disabilities while the students were in general education classrooms at Young Elementary.

15. Hysom travelled between general education classrooms to visit each of her assigned students each day. After arriving in a general education classroom, Hysom would sit next to her assigned student while the general education teacher gave instruction.

16. Hysom's job duties included assisting her assigned students with instructional exercises, assisting with personal hygiene, and behavior management. Hysom also would observe

3

her assigned students' behavior in the classroom and take notes on each students' behavior.

17. Shortly after Hysom was hired, she disclosed her disability, epilepsy, to the Young Elementary school nurse. At that time, Hysom requested a seizure action plan so that DISD would be prepared if a seizure occurred at work. The school nurse gave Hysom a seizure action plan form, and Hysom completed the form.

18. Thereafter, the nurse informed Young Elementary Principal, Lana Coffman ("Coffman") of Hysom's disability. Coffman and the school nurse asked Hysom to be used as an example to encourage other staff members at Young Elementary to complete seizure training. Hysom agreed, and as a result, the entire staff at Young Elementary was informed of Hysom's disability, epilepsy.

19. Hysom also informed Coffman that she was obtaining treatment for her disability—Hysom was participating in a study at an epilepsy monitoring unit to determine if Hysom was a good candidate for a surgical procedure to alleviate Hysom's epilepsy symptoms.

20. Generally, due to her disability, Hysom experiences nocturnal seizures and rarely experiences day-time seizures.

21. Hysom's seizures typically last for less than approximately one (1) minute. During a seizure, Hysom experiences motor symptoms such as muscles in her hands becoming tense and rigid. In addition, Hysom's awareness is affected by her seizures, which causes Hysom to stare into space during a seizure.

22. Hysom experienced a seizure on two (2) occasions, August 12, 2020 and August 14, 2020, during work hours.

23. After experiencing two (2) seizures at work, on August 17, 2020, Hysom met with

4

Coffman to express her fears that she would suffer adverse employment actions due to her disability. Coffman told Hysom not to worry—that DISD would "work with her."

24. After Hysom expressed her concerns that she was at risk of losing her job due to her disability, she experienced a seizure during work hours on three (3) occasions—August 25, 2020, September 5, 2020, and September 9, 2020.

25. On September 11, 2020, while Hysom was visiting one of her assigned students, Hysom was requested to immediately report to Coffman's office. Therefore, Hysom left the classroom and promptly reported to Coffman's office.

26. Upon arriving at Coffman's office, Hysom realized she had been called into a meeting with Coffman and DISD's Human Resources Director, Meradith Culpepper ("Culpepper"). Hysom had never met Culpepper prior to this meeting.

27. During the meeting, Culpepper informed Hysom that she knew Hysom has a disability (epilepsy). Culpepper further stated that after discussing Hysom's disability with Coffman—a discussion that did not include Hysom—it was decided that Hysom's employment as a special education paraprofessional with DISD must end due to her disability.

28. During the meeting, Culpepper and Coffman did not discuss the limitations of Hysom's disability, what accommodations Hysom may need, or what accommodation Hysom may prefer for her disability.

29. Moreover, Culpepper and Coffman did not refer to any performance-based or conduct-based reason for terminating Hysom.

30. Indeed, during her entire employment with DISD, Hysom did not have any performance or conduct issues.

31. During Hysom's entire employment, she never experienced a seizure while with a student.

32. During the September 11 meeting, Culpepper gave Hysom a pre-filled out resignation letter and instructed Hysom to sign the letter. Culpepper informed Hysom that if she did not sign the resignation letter, that DISD would terminate Hysom's employment. Therefore, Hysom signed the pre-filled resignation letter at the end of the meeting.

33. After the meeting, Hysom received a letter from Culpepper dated September 14, 2020. The letter confirmed that Hysom signed the September 11 resignation letter presented to her due to her "health concerns." The letter also confirmed Superintendent of DISD Dr. Joseph Coburn ("Coburn") accepted the resignation letter.

34. Thereafter, Hysom had a phone call with Coburn. During the call, Coburn confirmed that he had contact with Culpepper and Coffman (but not Hysom) regarding Hysom's disability status. Coburn further confirmed that DISD's employment decisions were made based on Hysom's disability.

35. DISD did not consider any reasonable accommodation to implement with respect to Hysom prior to terminating her employment.

36. DISD had knowledge of Hysom's disability, epilepsy, throughout her employment with DISD.

37. DISD's sole reason for terminating Hysom from her employment was her disability, epilepsy.

38. After being terminated, Hysom began searching for new employment. Hysom currently works as a caretaker.

### VII. DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 AND TEXAS LABOR CODE CHAPTER 21

39. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

40. Plaintiff asserts her claim for disability discrimination in violation of the Americans with Disabilities Act and Texas Labor Code Chapter 21.

41. The Americans with Disabilities Act prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of disability.

42. The Texas Labor Code Chapter 21 makes it an unlawful employment practice to discriminate against an employee because of the employee's disability.

43. As outlined above, Defendant discriminated against Hysom because of her disability in violation of the ADAAA and Texas Labor Code Chapter 21.

44. Hysom was subjected to different terms and conditions of employment and was ultimately terminated by Defendant because of her disability, as defined under the ADAAA and Texas Labor Code Chapter 21.

45. Defendant's discriminatory conduct has caused Hysom to suffer lost wages in the past and future, in addition to substantial physical and mental/emotional distress and inconvenience. As a result of Defendant's discriminatory actions, Hysom seeks to recover all damages she suffered because of Defendant's discrimination, including damages, equitable relief, injunctive relief, compensatory damages, punitive damages, lost wages in the past, loss of future earnings, emotional pain and suffering and mental anguish, all of which were caused by Defendant's treatment of Hysom.

46. Defendant intentionally and willfully engaged in prohibited and unlawful

7

employment practices without any regard as to Hysom's rights protecting her against any adverse actions taken by an employer as a result of her disability. Defendant's employment decisions taken against Hysom were undertaken in bad faith.

47. Defendant engaged in the conduct described above with malice or reckless disregard for Plaintiff's employment rights protected under Texas Labor Code Chapter 21.

48. The effect of the conduct complained of herein has deprived Hysom of her rights to equal employment opportunities by subjecting Hysom to adverse employment actions on the basis of her disability.

49. Defendant's acts and omissions, as set forth above, constitute discrimination based upon Hysom's disability, and such conduct violates the Americans with Disabilities Act and Texas Labor Code Chapter 21. Hysom further alleges that the discrimination against her was intentional and willful within the meaning of the above-described statutes. Accordingly, she is entitled to recover for the damages inflicted upon her as a proximate result of Defendant's violation of the ADAAA and Texas Labor Code Chapter 21.

50. Defendant engaged in unlawful employment practices, consisting of subjecting Hysom to different terms and conditions of employment and terminating Hysom on the basis of her disability. Defendant's actions constitute unlawful discrimination on the basis of Hysom's disability in violation of the ADAAA and Texas Labor Code Chapter 21.

51. As a direct and proximate result of Defendant's conduct, Hysom has sustained damages in the form of lost wages, front pay, future pecuniary losses, lost employment benefits, severe emotional distress, attorneys' fees and costs in pursuing this action, mental anguish, worry, severe grief, shame, humiliation, and damage to her personal and professional reputation for which

Defendant is liable. Accordingly, Defendant is liable for the damages Hysom has sustained as a result of Defendants' unlawful discrimination.

52. Defendant intentionally, with malice and reckless indifference to Hysom's rights, violated the ADAAA and Texas Labor Code Chapter 21. Accordingly, Hysom is entitled to an award of punitive damages against Defendant.

### VIII. DAMAGES

53. As a result of Defendant's violations of the Americans with Disabilities Act, Hysom has suffered and continues to suffer the following damages. Hysom sustained actual monetary losses, including lost wages and past and future physical and mental pain and distress and inconvenience caused by Defendant's discriminatory actions.

54. Defendant's discriminatory actions have caused Hysom to file this action. Accordingly, pursuant to the Americans with Disabilities Act and Texas Labor Code Chapter 21, Hysom is entitled to recover her attorneys' fees, litigation expenses, and costs incurred in pursuing this action.

55. Additionally, because Defendant was aware of Hysom's rights under federal law and Defendant acted with malice and reckless indifference of Hysom's rights, punitive damages are appropriate to punish Defendant for their discriminatory actions and deter Defendant from violating these laws in the future. Finally, Hysom is entitled to pre-judgment and post-judgment interest on all amounts described above, calculated at the prevailing rate.

### IX. PRAYER FOR RELIEF

As a direct and proximate result of Defendant's conduct, Hysom requests that judgement be entered in her favor and against Defendants, jointly in severally, awarding Hysom the following

relief:

a) Injunctive relief prohibiting Defendant from further unlawful conduct of the type described herein;

b) An award of back pay for lost wages suffered by Hysom as a result of Defendant's unlawful conduct and decision to terminate Hysom;

c) General damages for mental and emotional suffering caused by Defendant's unlawful conduct;

d) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

e) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

f) Reasonable attorneys' fees, costs, and expenses of litigation;

g) Prejudgment interest at the highest rate allowed by law;

h) Declaratory relief to the effect that Defendant violated Hysom's statutory rights; and

i) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Allison H. Peregory*
Drew N. Herrmann
Texas Bar No. 24086523
*drew@herrmannlaw.com*
Pamela G. Herrmann
Texas Bar No. 24104030
*pamela@herrmannlaw.com*

10

Allison H. Peregory
Texas Bar No. 24121294
aperegory@herrmannlaw.com

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
Phone: 817-479-9229
Fax: 817-887-1878
ATTORNEYS FOR ALYCIA HYSOM